THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| IN RE BP PRUDHOE BAY ROYALTY TRUST SECURITIES LITIGATION | ) ) ) ) ) ) ) ) ) ) ) | Case No. C06-1505 MJP **DEFENDANTS' OPPOSITION TO THE MOTION OF LEAD PLAINTIFF THE TERAMURA FAMILY TRUST GROUP FOR CLASS CERTIFICATION** ORAL ARGUMENT REQUESTED |

John L. Warden
Richard C. Pepperman, II
Steven J. Purcell
Gerald L. Black, Jr.
*Pro Hac Vice*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (tel.)
(212) 558-3588 (fax)

David C. Lundsgaard, WSBA # 25448
GRAHAM & DUNN PC
Pier 70
2801 Alaskan Way, Suite 300
Seattle, Washington  98121-1128
(206) 340-9691 (tel.)
(206) 340-9599 (fax)

*Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ..........................................................................................4

      A.     This Action.....................................................................................4

      B.     The New York Action..................................................................5

ARGUMENT ..............................................................................................................6

I.     PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE ENTITLED TO RELY ON THE FRAUD-ON-THE-MARKET PRESUMPTION OF RELIANCE............7

II.    LEAD PLAINTIFF CANNOT ADEQUATELY PROTECT THE INTERESTS OF THE PROPOSED CLASS............................................................17

CONCLUSION............................................................................................................22

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

i

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## TABLE OF AUTHORITIES

Page(s)

CASES

*Basic Inc.* v. *Levinson*,
   485 U.S. 224 (1988)..................................................................................7

*Bell* v. *Ascendant Solutions, Inc.*
   422 F.3d 307 (5th Cir. 2005) ...............................................................7, 8

*Binder* v. *Gillespie*,
   184 F.3d 1059 (9th Cir. 1999) .......................................................7, 8, 10

*Cammer* v. *Bloom*,
   711 F. Supp. 1264 (D. N.J. 1989) ............................................... *passim*

*Castano* v. *Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .....................................................................7

*Chamberlan* v. *Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ...................................................................6

*Dukes* v. *Wal-Mart, Inc.*
   509 F.3d 1168 (9th Cir. 2007) .................................................................6

*Gariety* v. *Grant Thornton, LLP*,
   368 F.3d 356 (4th Cir. 2004) ...................................................................6

*Gen'l Tel. Co.* v. *Falcon*,
   457 U.S. 147 (1982)..................................................................................6

*Hanlon* v. *Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .........................................................17, 20

*Hornreich* v. *Plant Indus., Inc.*,
   535 F.2d 550 (9th Cir. 1976) .................................................................20

*In re Micron Techs., Inc. Sec. Litig.*,
   247 F.R.D. 627 (D. Idaho 2007) ..............................................................8

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

ii

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*In re Polymedica Corp. Sec. Litig.*,
453 F. Supp. 2d 260 (D. Mass. 2006) ............................................................................ *passim*

*In re Xcelera.com Sec. Litig.*,
430 F.3d 503 (1st Cir. 2005) .................................................................................... 14

*Jackshaw Pontiac, Inc.* v. *Cleveland Press Pub. Co.*,
102 F.R.D. 183 (D. Ohio 1984) .............................................................................. 19

*Kamerman* v. *Steinberg*,
113 F.R.D. 511 (S.D.N.Y. 1986) ............................................................................ 19

*Kayes* v. *Pac. Lumber Co.*,
51 F.3d 1449 (9th Cir. 1995) .................................................................................. 17

*Krogman* v. *Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ...................................................................... 12, 13

*Lehocky* v. *Tidel Techs., Inc.*,
220 F.R.D. 491 (S.D. Tex. 2004) ...................................................................... 12, 13

*Nathenson* v. *Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) .................................................................................. 15

*O'Neil* v. *Appel*,
165 F.R.D. 479 (W.D. Mich. 1996) ................................................................... 12, 13

*Oscar Private Equity Invs.* v. *Allegiance Telecom, Inc.*,
487 F.3d 261 (5th Cir. 2007) .................................................................................. 15

*Serfaty* v. *Int'l Automated Sys., Inc.*,
180 F.R.D. 418 (D. Utah 1998) .............................................................................. 13

*Stoneridge Inv. Partners, LLC* v. *Scientific-Atlanta*,
128 S. Ct. 761 (2008)............................................................................................... 7

*Strigliabotti* v. *Franklin Res., Inc.*,
2006 WL 2792417 (N.D. Cal. Sep. 27, 2006) ....................................................... 19

*Sullivan* v. *Chase Inv. Servs. of Boston, Inc.*,
79 F.R.D. 246 (N.D. Cal. 1978)............................................................................. 17

*Unger* v. *Amedisys Inc.*,
401 F.3d 316 (5th Cir. 2005) ........................................................................... *passim*

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

iii

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Valentino* v. *Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ......................................................6

*Zlotnick* v. *TIE Commc'ns*,
    836 F.2d 818 (3rd Cir. 1988) ....................................................10


**STATUTES**

Fed. R. Civ. P. 23(a) ......................................................................6

Fed. R. Civ. P. 23(a)(4) ................................................................17

Fed. R. Civ. P. 23(b)(3) ..................................................................6


**OTHER AUTHORITIES**

BLACK'S LAW DICTIONARY (8th ed. 2004) ........................................10

Form 13F – Reports Filed by Institutional Investment Managers,
    http://www.sec.gov/answers/form13f.htm ................................14

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

iv

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## PRELIMINARY STATEMENT

Defendants BP p.l.c., BP Exploration (Alaska), Inc. ("BPXA"), Steve Marshall, Maureen Johnson and Robert Malone hereby submit this memorandum in opposition to Plaintiff's motion to certify the putative class in this case pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Plaintiff has not satisfied its burden of demonstrating that the requirements for class certification have been met. In particular, Plaintiff has failed to (i) establish that common questions predominate over individual ones and (ii) prove that it can adequately protect the interests of the proposed class.

A class cannot be certified under Rule 23 unless the court, after a rigorous analysis, is satisfied that plaintiff has satisfied the requirements for class certification. To certify a class in a securities fraud action, a plaintiff must show that the class properly may rely on the fraud-on-the-market presumption of reliance. Without the benefit of this presumption, individual questions of reliance—an essential element of a claim under Section 10(b) of the Securities Exchange Act of 1934—will predominate and prevent class certification. To rely on the fraud-on-the-market presumption in this case, Plaintiff must prove that units of the BP Prudhoe Bay Royalty Trust ("PBRT") were traded on an efficient market. In its class certification motion, Plaintiff dedicates barely three pages to applicability of the fraud-on-the-market presumption. Plaintiff's discussion of this presumption is superficial and perfunctory, without any support from expert testimony. Accordingly, Plaintiff has not satisfied its burden under Rule 23 of proving that common questions predominate over individual ones in this case.

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

In the Ninth Circuit, courts assess the efficiency of a market by using the so-called *Cammer* factors, none of which support a finding of an efficient market in this action.

- First, Plaintiff has not adequately established a high weekly trading volume for PBRT units. Plaintiff does not explain why its trading volume figure is reliable, and there are specific reasons to believe that it is not. Moreover, even if Plaintiff's trading volume figure were reliable and otherwise adequate, it is trumped by publicly-available data showing the existence of strong impediments to short-selling PBRT units during the putative class period, which is indicative of an inefficient market.

- Second, a significant number of securities analysts do not regularly follow and report on PBRT units. Indeed, Plaintiff has pointed to only three reports by two different analysts. This is insufficient to meet its burden of proving that a "significant number" of analysts follow PBRT units.

- Third, Plaintiff refers to a list of institutional investors in an apparent attempt to establish the existence of market makers or arbitrageurs in the PBRT units. This is irrelevant. Institutional investors are not necessarily market makers or arbitrageurs, and Plaintiff does not offer any basis for concluding that the mere fact that such institutional investors held PBRT units is of any consequence.

- Fourth, Plaintiff has not met its burden of establishing a cause and effect relationship between unexpected corporate news and changes in the price of PBRT units. Plaintiff focuses on only two self-serving examples in which the price of PBRT units dropped after unexpected news. That is insufficient. Plaintiff cannot simply ignore the numerous

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

2

other instances in which the unit price was *not* affected by unexpected news or disclosures.

Because Plaintiff has not established that the *Cammer* factors weigh in favor of a finding of an efficient market, Plaintiff is not entitled to rely on the fraud-on-the-market presumption and therefore has not proven that common questions predominate over individual ones.

The alleged class also cannot be certified because Plaintiff has failed to prove that George Allen, the Trustee of Lead Plaintiff Teramura Family Trust Group, can adequately protect the interests of the entire proposed class. The mere potential for a conflict of interest is enough to warrant denying certification, and here the potential for a conflict is significant. In addition to his role here, Mr. Allen also represents a trust that is a member of the Teramura Family Trust Group (the Diana Allen Life Insurance Trust) in a related putative class action brought against certain of the Defendants in the United States District Court for the Southern District of New York. In that other action, Mr. Allen seeks a recovery on behalf of the member trust and an overlapping putative class of PBRT unitholders under a contract theory predicated on the same underlying events that are at issue here. In his deposition, Mr. Allen admitted that he does not understand the difference between this case and the separate action filed by his attorneys in New York. He incorrectly believes that the two putative classes are identical in composition and interest. In fact, given the competing interests of the two purported classes, it is highly questionable whether the same representative can properly represent both, without at least the potential of sacrificing the interests of one class to the benefit of the other. This potential conflict alone is sufficient to deny class certification.

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

3

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

2

### STATEMENT OF FACTS

#### A.    This Action

In 2006, two putative class actions were filed in this Court on behalf of holders of PBRT units under federal securities laws. This Court consolidated the two actions and appointed the Teramura Family Trust Group as Lead Plaintiff. The member trusts of the Teramura Family Trust Group are the Yoko Teramura Family Insurance Trust, the Mami Teramura Family Trust, and the Diana Allen Life Insurance Trust. George Allen is the Trustee for each of the member trusts and is acting on their behalf in this action. Zwerling, Schachter & Zwerling, LLP ("ZS&Z") represents the Lead Plaintiff.[1]

On May 1, 2007, Lead Plaintiff filed its Consolidated Amended Class Action Complaint in this action. The Complaint named as defendants BP p.l.c., BPXA and three individuals. Plaintiff alleges that Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 and that BP p.l.c. and the individual defendants are also liable as "controlling persons" under Section 20(a). The purported bases of these claims are alleged misstatements and omissions related to BPXA's maintenance and operation of the oil transit lines in Prudhoe Bay, Alaska. Plaintiff alleges that BPXA negligently maintained those pipelines and that Defendants made false and misleading statements to Plaintiff and other PBRT unitholders about BPXA's practices and the consequences thereof.

---

[1] Mr. Allen has known both Jeffrey Zwerling and Robert Schachter, two of the named partners in ZS&Z, in a personal capacity for almost fifty years. (*See* Declaration of David C. Lundsgaard ("Lundsgaard Decl."), Ex. A (attaching transcript of deposition of George Allen, dated July 1, 2008, ("Allen Dep.") at 80-81.) Mr. Allen acts a financial advisor and accountant for Mr. Schachter, has retained ZS&Z in his capacity as a representative for another entity, and has repeatedly consulted Mr. Schachter regarding other pending and potential litigations over the years. (*Id.* at 80, 84-88.)

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

4

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

The putative class in this case is defined as "all persons who purchased the Trust Units during the Class Period, . . . from March 31, 2005 through and including February 5, 2007." (Compl. ¶ 265.) Each of the member trusts of the Teramura Family Trust Group purchased PBRT units during the purported Class Period. Plaintiff has moved to certify this alleged class under Rules 23(a) and 23(b)(3).

**B.     The New York Action**

Represented by Mr. Allen in his capacity as Trustee, the Diana Allen Life Insurance Trust, one of the member trusts of the Teramura Family Trust Group, filed a separate putative class action against BP p.l.c., BPXA, and The Standard Oil Company ("Standard Oil") in the Southern District of New York on December 6, 2006 (the "New York action"). The claims in the New York action arose out of the same factual allegations as this action: namely, BPXA's maintenance and operation of the Prudhoe Bay oil transit lines. In the New York action, plaintiff alleges that BPXA and Standard Oil breached the BP Prudhoe Bay Royalty Trust Agreement, and that all of the defendants breached the Support Agreement and were negligent in maintaining the Prudhoe Bay oil transit lines.

The putative class in the New York action is different from, but overlaps with, the putative class here. The New York class consists of "all persons and entities who owned, controlled or possessed the [PBRT] Units and who suffered damages as a result of the Defendants' improper conduct." (Diana Allen Compl. ¶ 39.) ZS&Z represents the Diana Allen Life Insurance Trust in the New York action as well. On March 31, 2008, the Court granted

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

5

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

defendants' motion to dismiss the New York action. Plaintiffs filed an appeal on April 24, 2008, which is currently pending in the Second Circuit.

## ARGUMENT

On a motion for class certification, the plaintiff bears the burden of establishing that all requirements for class certification under Rule 23 are met.[2] *Valentino* v. *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). To certify a class under Rule 23(b)(3), as Plaintiff seeks to do here, Plaintiff must prove that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As the Supreme Court has stated, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen'l Tel. Co.* v. *Falcon*, 457 U.S. 147, 161 (1982); *see also Chamberlan* v. *Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (a court must "rigorously analyze the facts of a class action to ensure that it meets the requirements for certification"). This "rigorous" analysis requires a court to look beyond the pleadings and make findings that a plaintiff has satisfied the requirements of Rule 23.[3] *See* Fed. R. Civ. P. 23(b)(3) ("A class action may be maintained if Rule 23(a) is satisfied and if . . . the

---

[2] Rule 23 requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

[3] Although the merits of a plaintiff's claims are not at issue at the class certification stage, merits issues may overlap with class certification issues. This does not relieve the court of its obligation to conduct the rigorous analysis necessary to make the proper findings under Rule 23. *See Dukes* v. *Wal-Mart, Inc.*, 509 F.3d 1168, 1177 n.2 (9th Cir. 2007); *Gariety* v. *Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004).

DEFENDANTS' OPPOSITION TO THE MOTION OF LEAD PLAINTIFF THE TERAMURA FAMILY TRUST GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

6

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1   court *finds* that the questions of law or fact common to class members predominate over any

2   questions affecting only individual members.") (emphasis added).

3   **I.     PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE ENTITLED TO**
        **RELY ON THE FRAUD-ON-THE-MARKET PRESUMPTION OF RELIANCE.**

4

5           To prevail on a claim under Section 10(b) of the Securities Exchange Act of 1934 and

6   Rule 10b-5 thereunder, a plaintiff must prove reliance. *See Stoneridge Inv. Partners, LLC* v.

7   *Scientific-Atlanta*, 128 S. Ct. 761, 769 (2008). In a securities fraud action, individual questions of

8   reliance will predominate over common questions and preclude class certification unless plaintiff

9   demonstrates that the fraud-on-the-market presumption applies. *See Basic Inc.* v. *Levinson*, 485

10  U.S. 224, 242 (1988) ("Requiring proof of individualized reliance from each member of the

11  proposed plaintiff class effectively would have prevented respondents from proceeding with a

12  class action, since individual issues then would have overwhelmed the common ones."); *Castano*

13  v. *Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) ("[A] fraud class action cannot be certified

14  when individual reliance will be an issue."). Thus, to certify a class in a securities fraud case

15  such as this one, plaintiff must demonstrate at the class certification stage that the proposed class

16  is entitled to rely on the fraud-on-the-market presumption. *See Bell* v. *Ascendant Solutions, Inc.*,

17  422 F.3d 307, 312 (5th Cir. 2005).

18

19

20          For the fraud-on-the-market presumption to apply, plaintiff must prove that the market in

21  which the securities in question were traded was efficient. *Binder* v. *Gillespie*, 184 F.3d 1059,

22  1064 (9th Cir. 1999). "Without an initial demonstration of market efficiency, there is no

23  assurance that the available material information concerning the stock translates into an effect on

24  the market price and supports a classwide presumption of reliance." *Unger* v. *Amedisys Inc.*, 401

25

26  DEFENDANTS' OPPOSITION TO THE MOTION OF
    LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
    GROUP FOR CLASS CERTIFICATION
    
    Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
 Pier 70, 2801 Alaskan Way ~ Suite 300
 Seattle, Washington  98121-1128
 (206) 624-8300/Fax: (206) 340-9599

7

F.3d 316, 322 (5th Cir. 2005). "The plaintiffs' proffer of evidence concerning efficiency must be rigorously examined by the Court before finding that they are entitled to a presumption of reliance." *In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 634 (D. Idaho 2007); *see also Bell*, 422 F.3d at 312 (rejecting proposition "that a court must accept mere allegations of market efficiency" as "demonstrably at odds" with "district court's duty, rooted in the text of rule 23(b)(3)").

In assessing market efficiency, the Ninth Circuit looks to the factors first articulated in *Cammer* v. *Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989). *See Binder*, 184 F.3d at 1064-65. The five so-called *Cammer* factors are: (1) whether the security's weekly trading volume is high; (2) whether analysts regularly follow and report on the stock; (3) whether there are market makers or arbitrageurs for the stock; (4) whether the company is eligible to file a Form S-3 with the SEC; and (5) whether empirical facts reveal a cause and effect relationship between unexpected corporate news and immediate responses in the stock price.

Plaintiff has failed to satisfy its burden of proving that the five *Cammer* factors justify a finding that the market for PBRT units was efficient. A class cannot be certified in this case based on Plaintiff's superficial treatment of the *Cammer* factors unsupported by expert analysis. Without the benefit of the fraud-on-the-market presumption, Plaintiff cannot establish that common questions predominate over individual ones, as required under Rule 23.

*Trading Volume*. In an effort to show that PBRT units traded at a high weekly volume—the first *Cammer* factor—Plaintiff asserts that the PBRT units traded at an average "weekly turnover rate" of 4%. (Pl.'s Mot. at 21.) This figure is not reliable. As an initial matter, Plaintiff

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

8

fails to account for the fact that "trade volume can be grossly exaggerated on some exchanges through double-counting, sometimes by over fifty percent." *Unger*, 401 F.3d at 324. In *Unger*, the Fifth Circuit reversed the certification of a class because the district court "did not determine the mathematically correct average weekly trading volume," but rather simply accepted plaintiff's figures based on Internet print-outs. *Id.* Rejecting the district court's approach, the Fifth Circuit observed that "[a]t the certification stage, reliance on unverifiable evidence is hardly better than relying on bare allegations." *Id.* Like the plaintiff in *Unger*, Plaintiff here bases its claim of a "4% weekly turnover rate" entirely on Internet print-outs. (*See* Drachler Decl. ¶ 3.) As a result, Plaintiff has not demonstrated that this figure is reliable and not the product of double-counting.

Moreover, Plaintiff's 4% figure is substantially inflated due to the inclusion of a few days of extremely high trading volumes in Plaintiff's calculation of the "average" trading volume. As reflected in Plaintiff's chart, the trading volume of PBRT units between August 7, 2006 and August 14, 2006 was abnormally high following the announcement of the Prudhoe Bay shutdown. Indeed, during that one-week, the size of the reported trading volume was equal to over half of the outstanding PBRT units. The inclusion of these abnormal days in the daily trading volume calculation results in an inflated calculation of the weekly trading volume. Such an inflated figure says little about the characteristics of the market for PBRT units on "non-news" days during the putative class period and, as a result, says little about whether the market

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

9

**GRAHAM & DUNN** PC
 Pier 70, 2801 Alaskan Way ~ Suite 300
 Seattle, Washington  98121-1128
 (206) 624-8300/Fax: (206) 340-9599

was truly efficient.[4] *In re Polymedica Corp. Sec. Litig.*, 453 F. Supp. 2d 260, 269-70 (D. Mass. 2006).

In addition, publicly-available data cast doubt on Plaintiff's claim that the trading volume here is indicative of an efficient market. Although trading volume is certainly relevant for assessing efficiency, it is not dispositive. Courts instead have recognized that other pertinent information should be considered. *See*, *e.g.*, *id.* at 270-71 (holding that notwithstanding very high trading volume, data revealing that market is not information efficient trumps). The ease with which investors can sell a stock short is relevant to the question of market efficiency because short-selling is the "only method by which non-owners of the stock . . . can use what information they have directly to affect the market price." *Id.* at 273 n.12.[5] Indeed, "low or nonexistent barriers to short selling are . . . essential to information efficiency." *Id.* at 275 n.18; *see also id.* at 276 (discussing how impediments to selling short prevent stock price from absorbing news "rapidly and quickly").

---

[4] The fact that PBRT units were traded on the New York Stock Exchange ("NYSE") alone does not establish that the market for PBRT units was efficient. *Cammer*, 711 F. Supp. at 1281 ("It would be illogical to apply a presumption of reliance merely because a security is traded within a certain 'whole market', without considering the trading characteristics of the individual stock itself."); *see also Binder*, 184 F.3d at 1065 ("Where the stock is traded is not the crucial issue. The important question is whether the stock is traded in a market that is efficient-one that obtains material information about a company and accurately reflects that information in the price of the stock.").

[5] Short-selling is the practice of borrowing securities for the purpose of selling them due to a belief that the price of the security will decline and the investor can profit from that decline by "repaying" the borrowed securities later. *See* BLACK'S LAW DICTIONARY (8th ed. 2004); *see also Zlotnick* v. *TIE Commc'ns*, 836 F.2d 818, 820 (3d Cir. 1988) ("Where the traditional investor seeks to profit by trading a stock the value of which he expects to rise, the short seller seeks to profit by trading stocks which he expects to decline in value. A typical short seller expects decline because, based on his view of the underlying strengths and weaknesses of a business, he concludes that the market overvalues the business' stock.").

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

10

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

There were serious impediments to selling PBRT units short during the putative class period. An investor cannot sell a stock short unless he or she can find shares to borrow. The short interest as a percentage of average daily trading volume figure represents the relative ease (or difficulty) a short-seller will encounter in finding shares to borrow. When this percentage is high, it is more difficult to find the shares to borrow: too many investors are attempting to sell the stock short, and the amount of trading is insufficient to allow each of them to find shares to borrow. During the putative class period in this case, the short interest as a percentage of the average daily trading volume was almost 600%. (*See* Lundsgaard Decl., Ex. B.) This means that an investor attempting to sell PBRT units short would have to wait six trading days—more than an entire trading week—to complete the trade. In fact, during many months in the putative class period, the percentage was over 1000%, meaning it would take more than two weeks to cover short positions, even in the highly unusual circumstance that the trading volume consisted entirely of covering short positions. *Id.* The fact that it would take so long to cover short-selling positions highlights the impediment that existed to selling short PBRT units, which in turn highlights the length of time it took for the market for PBRT units to respond to any new information imparted to the market. The "high cost of shorting" present here is indicative of an inefficient market. *See Polymedica*, 453 F. Supp. 2d at 273-74 (holding that period of ten trading days needed to cover a short-sale was indicative of market inefficiency).

*Securities Analysts*. Plaintiff also has not demonstrated that the second *Cammer* factor— whether "a significant number of securities analysts follow[ed] and report[ed] on a company's stock during the class period"—supports a finding of market efficiency. In its class certification

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

11

motion, Plaintiff simply refers back to the Complaint for the proposition that analysts reported on PBRT units. (Pl.'s Mot. at 20.) This reference is inadequate to establish that a significant number of analysts followed and reported on PBRT units during the class period.

Paragraph 114 of the Complaint mentions one AG Edwards report issued in March 2006, paragraph 151 mentions one Citigroup report issued in June 2006, and paragraph 187 mentions one Citigroup report issued in August 2006. Two analysts issuing a total of three reports is not "a significant number." *See, e.g.*, *Krogman* v. *Sterritt*, 202 F.R.D. 467, 475 (N.D. Tex. 2001) (finding market to be inefficient when plaintiff claimed there were "at least two" securities analysts following the stock); *Lehocky* v. *Tidel Techs., Inc.*, 220 F.R.D. 491, 508 (S.D. Tex. 2004) (holding that even when four analysts tracked the stock and there was proof that their reports affected the stock price, "the level of analyst coverage is relatively neutral in terms of finding market efficiency"); *O'Neil* v. *Appel*, 165 F.R.D. 479, 501 (W.D. Mich. 1996) (noting that "[m]ajor corporations are closely followed by hundreds of securities analysts throughout the country").

Even taking into consideration analyst coverage beyond the reports referenced in the Complaint does not assist Plaintiff. Currently, only one Citigroup analyst tracks PBRT units. (*See* Lundsgaard Decl., Ex. C.) During the class period, Citigroup issued only eight reports, most of which appear to have been issued only after high-profile events occurred such as the Prudhoe Bay shutdown in August 2006. (*See* Lundsgaard Decl., Ex. D.) A.G. Edwards & Sons and ValuEngine, Inc. also tracked PBRT units for portions of the class period, and those two companies issued a total of thirteen reports. (*See* Lundsgaard Decl., Ex. E.) All of these reports,

DEFENDANTS' OPPOSITION TO THE MOTION OF LEAD PLAINTIFF THE TERAMURA FAMILY TRUST GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

12

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

however, were issued only after high-profile news events regarding PBRT units. In sum, at most twenty-one reports by only three different analysts were issued during the class period. These numbers are still not sufficient to meet the "significant number" requirement of *Cammer*. *See Krogman*, 202 F.R.D. at 475; *Lehocky*, 220 F.R.D. at 508; *O'Neil*, 165 F.R.D. at 501.

Additionally, to the extent that these reports were issued only after widely-reported news events occurred discounts their significance because the reports did not disseminate any new information. The *Cammer* court found the existence of a significant number of analysts to be evidence of an efficient market because any disclosures by the company would be "closely reviewed" by the analysts who then would make recommendations to their clients. *Cammer*, 711 F. Supp. at 1286. "In this way the market price of the stock would be bid up or down to reflect the financial information contained in the [company's] reports, as interpreted by the securities analysts." *Id.* The more analysts that report on the stock, "the more likely that investors rely on disseminated information." *LeHocky*, 220 F.R.D. at 508.

Here, however, the analyst reports do not appear to have disseminated any new information to investors. Simply re-stating news of which investors are already aware is not the "close[] review[]" of financial information contemplated by the *Cammer* court. 711 F. Supp. at 1286; *see also Serfaty* v. *Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 422 (D. Utah. 1998) (holding that "advertisements, press releases, and other information disseminated by the Defendants themselves . . . is not a substitute for reports made by securities analysts"); *O'Neil*, 165 F.R.D. at 501 (contrasting "random commentary by news reporters" with "serious attention to stock by professional securities analysts").

DEFENDANTS' OPPOSITION TO THE MOTION OF LEAD PLAINTIFF THE TERAMURA FAMILY TRUST GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

13

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Market Makers/Arbitrageurs*. Plaintiff claims to satisfy the third *Cammer* factor—whether market makers or arbitrageurs exist for the stock—by simply noting that "large blocks of Trust Units were held by numerous institutions." (Pl.'s Mot. at 20.) This is insufficient to satisfy Plaintiff's burden. Exhibit D to Plaintiff's motion states that these institutions are all "13F institutions." Plaintiff does not explain, however, what bearing this has on the analysis. There is no reason to believe these institutional investors were, in fact, market makers or arbitrageurs for PBRT units. Nor does Plaintiff offer any basis for concluding that the fact that such institutions held PBRT units is significant. *See generally* Form 13-F – Reports Filed by Institutional Investment Managers, http://www.sec.gov/answers/form13f.htm (providing background information on 13F investors).[6]

*Empirical Cause and Effect Relationship*. The fifth *Cammer* factor—whether empirical facts reveal a cause and effect relationship between unexpected corporate news and immediate responses in the stock price—is often viewed as the most important factor. *See In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 512 (1st Cir. 2005) (describing fifth factor as "in many ways, the most important *Cammer* factor"); *Cammer*, 711 F. Supp. at 1287 (fifth factor is "the essence of an efficient market and the foundation for the fraud on the market theory").

Plaintiff has not adequately demonstrated a cause and effect relationship between unexpected news and changes in the price of PBRT units. Instead, Plaintiff has selectively

---

[6] With respect to the fourth *Cammer* factor, Plaintiff incorrectly asserts that "a Form F-3 Registration Statement was filed for the Trust with the SEC." (Pl.'s Mot. at 20.) PBRT has never filed a Form F-3 or a Form S-3 with the Securities and Exchange Commission. Plaintiff cites PBRT's fiscal year 2007 10-K for the proposition that the Trust filed a Form F-3. Their citation, however, references a Form F-3 that was jointly filed by BPXA, Standard Oil, and The British Petroleum Company on August 7, 1989.

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

14

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

chosen two dates that purportedly meet its needs. The analysis of only two dates is hardly enough to establish the necessary cause and effect relationship required by *Cammer*.[7] If the full history of the price of PBRT units is examined, it becomes evident that there was frequently no cause and effect relationship between significant news and changes in the unit price. Unless the market is responding to information as it becomes public, a presumption of class-wide reliance is not appropriate. *See Oscar Private Equity Invs.* v. *Allegiance Telecom, Inc.*, 487 F.3d 261, 269-70 (5th Cir. 2007); *Nathenson* v. *Zonagen Inc.,* 267 F.3d 400, 415 (5th Cir. 2001) ("[W]here the facts properly considered by the district court reflect that the information in question did not affect the price of the stock then the district court may properly deny fraud-on-the-market based recovery.").

Plaintiff has failed to address the instances in which highly relevant news became public and yet there was no change in price of PBRT units. Most notably, two events occurred in 2006 that had no effect on the price of PBRT units. First, an oil spill occurred at Prudhoe Bay on March 2, 2006. After that spill occurred, it was widely-reported that North Slope oil production was decreased by 12 percent. Notwithstanding that news, on March 3, 2006 (the first day the spill was reported), the price of PBRT units hardly moved at all. Second, a criminal investigation into BPXA's management of the Prudhoe Bay pipelines in Alaska's North Slope was announced on April 6, 2006. This announcement was also widely publicized, including in *The Wall Street*

---

[7] Plaintiff's analysis of those two days fails to take into account or control for any number of variables that could have caused the unit prices to change on those particular days. *See Unger*, 401 F.3d at 325 ("Demonstrating that market reactions are caused by company press releases should not, however, be an exercise in *post hoc, propter hoc* logic. Many variables have the potential to and do affect a stock price—the daily market average; national, local and industry-specific economic news; competitors' activities; and on and on.").

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

15

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Journal*. Nevertheless, the price of PBRT units on April 6 was not affected. The lack of any market reaction to the announcements of these two events casts strong doubt on the existence of the cause and effect relationship necessary to support a finding that the market for PBRT units was efficient.

In addition, the *Dow Jones News Service* reported on August 24, 2006 that BP would have to curtail production of 90,000 barrels of crude oil a day after an equipment failure at Prudhoe Bay, bringing production down to 110,000 barrels. Again, the price of PBRT units exhibited no downward movement in response to this news. Further, on October 10, 2006, the *Dow Jones International News* reported that production at the Prudhoe Bay oil fields had been shut down after high winds caused a power outage and cut production from 350,000 barrels a day to 20,000 barrels. Once again, there was no downward movement in the price of PBRT units that day either.

In short, Plaintiff's selection of two dates in which the price of PBRT units fell following the announcement of news is insufficient to establish a cause and effect relationship between unexpected news and unit price. (*See* Pl.'s Mot. at 21.) As one court explained, "[i]t is not sufficient simply to report movement on significant news days. To approach usefulness, an analysis should statistically compare all news days with all non-news days." *PolyMedica*, 453 F. Supp. 2d  at 270 (criticizing plaintiff's "mere listing of five days on which news was released and which exhibited large price fluctuations" as "prov[ing] nothing"). This is especially true given the numerous other instances in which unexpected news clearly did not affect the price of PBRT units.

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

16

\* \* \*

Plaintiff has failed to demonstrate that it is entitled to rely on the fraud-on-the-market presumption. Indeed, Plaintiff has not even made a serious effort to satisfy that burden through evidence and analysis. Without the benefit of that presumption, individual questions of reliance predominate, and class certification should be denied. *See In re PolyMedica Corp. Sec. Litig.*, 453 F. Supp. 2d at 278 ("[T]he Court finds that [plaintiff]'s weak showing regarding market efficiency has been sufficiently rebutted by [defendant].").

## II. LEAD PLAINTIFF CANNOT ADEQUATELY PROTECT THE INTERESTS OF THE PROPOSED CLASS.

Before a class can be certified, a plaintiff must demonstrate that the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy this requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger*, 401 F.3d at 321. In analyzing adequacy of representation, "[e]xamination of potential conflicts of interest has long been an important prerequisite to class certification." *Hanlon* v. *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As courts have recognized, the mere potential for a conflict of interest may be sufficient to deny certification in order to protect the interests of absent class members. *See Kayes* v. *Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.") (quoting *Sullivan* v. *Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978)).

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

17

The deposition of Lead Plaintiff's representative, George Allen, raised serious doubts about his ability adequately to protect the interests of the proposed class in this case. Mr. Allen is not "sufficiently informed about the litigation" and does not appear to be adequately involved in the decision-making process. *Unger*, 401 F.3d at 321. Mr. Allen also is simultaneously pursuing recovery on behalf of a different class of PBRT unitholders in the New York action. Yet, throughout his deposition, Mr. Allen was unable to distinguish between the two cases and putative classes, failing to recognize that the two alleged classes are distinct and have differing interests. He does not even understand that the proposed class definitions and periods are different. (Lundsgaard Decl., Ex. A (Allen Dep.) at 55-56, 179.) As a consequence, Mr. Allen also apparently is of the view that the interests of both putative classes are exactly the same. (*See id.* at 56.) Because Mr. Allen is unaware that the two purported classes are different, he will not be able to take both classes' interests into account and pursue them both in an appropriate manner. As a result, there is a potential risk that any settlement or strategic decision in one case could come at the expense of the other class's interests, rendering Mr. Allen unable to serve as an adequate class representative for both putative classes.

As his deposition made clear, Mr. Allen has conflated the two actions in a number of other ways as well. Mr. Allen testified that he believed he was being deposed for both the New York action and this action at the same time (*id.* at 179), and that he believes that this action "is sort of being deferred while the New York case gets decided" (*id.* at 100). When asked about his views of the relative strengths and weaknesses of his claims in this action, Mr. Allen responded that the "weakest part seems to be the New York case." (*Id.* at 116.) He later elaborated that "if

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

18

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

the New York case doesn't ultimately survive appeal this case may become simpler" because "if

the New York case doesn't survive that eliminates the breach of contract, that simplifies the case

for both the plaintiffs and defendants." (*Id.* at 102-03.) This testimony makes no sense.

Making matters worse, the putative classes in both this case and the New York action are

represented by the very same law firm, ZS&Z.[8] And it is not clear that Lead Plaintiff, as opposed

to counsel, is the one "directing the litigation," as required by Rule 23. *Unger*, 401 F.3d at 321.

For instance, ZS&Z made the decision to bring two different lawsuits (Lundsgaard Decl., Ex. A

(Allen Dep.) at 132-33), and ZS&Z decided how to define the putative class periods in both

actions (*id.* at 109-10). Plaintiff and ZS&Z cannot adequately represent two competing groups of

unitholders that are attempting to recover using different theories based on the same set of facts.

Such a situation clearly presents a potential conflict of interest. *See Strigliabotti* v. *Franklin Res.,*

*Inc.*, No. C 04-00883 SI, 2006 WL 2792417, at *4 (N.D. Cal. Sep. 27, 2006) (denying

certification when single plaintiff with same attorneys is trying to prosecute two class actions

involving "overlapping periods of time" because two cases "would be competing for the same

pool of money, thus creating a structural incentive to favor one group over the other"); *Jackshaw*

*Pontiac, Inc.* v. *Cleveland Press Pub. Co.*, 102 F.R.D. 183, 192 (D. Ohio 1984) (finding

"particularly disturbing" conflict present when same counsel represents two classes "seeking to

tap the same pool of . . . assets"); *see also Kamerman* v. *Steinberg*, 113 F.R.D. 511, 516

(S.D.N.Y. 1986) ("[P]laintiffs argue that defendants have sufficient assets to compensate

---

[8] There is no separate retainer agreement for this action. (Lundsgaard Decl., Ex. A (Allen Dep.) at 77-79.)

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

19

plaintiffs in both actions, should they prevail. Plaintiffs' mere assertion is insufficient to dispel the doubt that recovery in the class action may reduce potential recovery in the derivative action.").

The danger that Mr. Allen may favor one class over the other is particularly acute here, given that he has completely conflated the two actions. For example, if Defendants were to engage in settlement negotiations for both actions, Mr. Allen would be unable to assess whether any proposed settlement adequately compensated *all* class members in both cases. Moreover, if Plaintiff were to settle one action, there is a substantial risk that it could affect the vigor with which Plaintiff pursues recovery in the other action. *See Hanlon*, 150 F.3d at 1020 (noting that one question in assessing adequacy is "will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class"). Alternatively, Plaintiff or ZS&Z could use one of the actions as leverage against Defendants in pursuing settlement negotiations to the detriment of one of the putative classes. *See Hornreich* v. *Plant Indus., Inc.*, 535 F.2d 550, 552 (9th Cir. 1976) (finding plaintiff to be inadequate representative when derivative lawsuit was brought only as leverage in settlement negotiations of another suit). These concerns are of no less significance outside the settlement context. Indeed, Lead Plaintiff's continuing role in both cases will repeatedly require strategic decisions that may detrimentally impact absent class members in the other case. One obvious example is damages theories.

*      *      *

Given the involvement of Mr. Allen and ZS&Z in the two competing litigations, coupled with Mr. Allen's ignorance of the distinct classes and differing interests of the classes he seeks to

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

20

represent, Lead Plaintiff cannot adequately protect the interests of absent class members in this case, and the purported class should not be certified.

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION

Case No. C06-1505 MJP

21

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CONCLUSION

For the foregoing reasons, Lead Plaintiff's motion for class certification should be denied.

DATED this 21st day of July, 2008.

GRAHAM & DUNN PC


By /s/ David C. Lundsgaard
David C. Lundsgaard, WSBA #25448
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA  98121-1128
Email: dlundsgaard@grahamdunn.com

John L. Warden
Richard C. Pepperman, II
Steven J. Purcell
Gerald L. Black, Jr.
*Pro Hac Vice*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (tel.)
(212) 558-3588 (fax)

*Attorneys for Defendants*

DEFENDANTS' OPPOSITION TO THE MOTION OF
LEAD PLAINTIFF THE TERAMURA FAMILY TRUST
GROUP FOR CLASS CERTIFICATION
Case No. C06-1505 MJP

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

22